**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARC GOLDNER, Individually and as Officer of GOLDEN BELL ENTERTAINMENT, LLC, a California company and GOLDEN BELL STUDIOS, LLC, GOLDEN BELL ENTERTAINMENT, LLC., a Nevada Company and GOLDEN BELL STUDIOS, LLC, <br><br> *Plaintiffs*, <br><br> - against – <br><br> ALEXANDER NORRIS, and ANDREWS MCMEEL UNIVERSAL, LLC AND ANDREWS MCMEEL PUBLISHING, LLC, <br><br> *Defendants*. | Civil Action No.: 1:23-cv-04078-PAE-SN |

**Defendant Alexander Norris' Memorandum Of Law In Opposition To Plaintiffs' Motion For Leave To Amend**

SAUL EWING LLP
Francelina M. Perdomo Klukosky
Christie R. McGuinness
1270 Avenue of the Americas, Suite 2800
New York, New York 10020
T: (212) 980-7200
Francelina.Perdomoklukosky@saul.com
Christie.McGuinness@saul.com

*Attorneys for Defendant*
*Alexander Norris*

Dated: August 30, 2024.

## TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ................................................................................................. 1

II.   PRELIMINARY STATEMENT ......................................................................... 1

III.  STATEMENT OF RELEVANT FACTS .......................................................... 3

    A.    THE FIRST ACTION ............................................................................... 3
    B.    PLAINTIFFS' BELATED ATTEMPTS TO ASSERT COMPULSORY
          COUNTERCLAIMS ................................................................................. 3
    C.    THIS COURT'S DECISION DENYING PLAINTIFFS' ABILITY TO
          BRING AFFIRMATIVE COMPULSORY COUNTERCLAIMS IN THE
          FIRST ACTION ........................................................................................ 3
    D.    THE PARTIES' EXTENSIVE SUMMARY JUDGMENT BRIEFING ............... 4
    E.    RELEVANT    PORTIONS    OF    THIS    COURT'S    REPORT    &
          RECOMMENDATION ............................................................................... 4

          1.    SCOPE OF THE COLLABORATION AGREEMENT ............................. 4
          2.    SECTION 1(A) OF THE COLLABORATION AGREEMENT ................ 5
          3.    SECTION 1(C) OF THE COLLABORATION AGREEMENT ................ 5
          4.    SECTION 2(B) OF THE COLLABORATION AGREEMENT ................ 5
          5.    SECTION 2(C) OF THE COLLABORATION AGREEMENT ................ 5
          6.    SECTION 3(C) OF THE COLLABORATION AGREEMENT ................ 6

    F.    RELEVANT PORTIONS OF THIS COURT'S OPINION & ORDE ................. 6

          1.    SECTION 1(H) OF THE COLLABORATION AGREEMENT ................ 6
          2.    SECTION 2(D) OF THE COLLABORATION AGREEMENT ................ 6
          3.    SECTION 3(C) OF THE COLLABORATION AGREEMENT ................ 7

    G.    ALLEGATIONS IN THE PROPOSED AMENDED COMPLAINT ................... 7

IV.  ARGUMENT ......................................................................................................... 8

    A.    LEGAL STANDARD ON MOTION FOR LEAVE TO AMEND ........................ 8
    B.    THIS COURT'S PRIOR DECISION DENYING PLAINTIFFS' MOTION
          TO BRING COMPULSORY COUNTERCLAIMS IN THE FIRST
          ACTION BARS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY ................... 9

          1.    LAW OF THE CASE BARS PLAINTIFFS' COMPLAINT ................... 11
          2.    COLLATERAL ESTOPPEL BARS PLAINTIFFS' COMPLAINT ........ 12

               a.    THE ISSUES IN THE FIRST ACTION AND SECOND
                    ACTION ARE IDENTICAL ........................................................ 13

i

b.    THE ISSUES IN THE FIRST ACTION WERE ACTUALLY LITIGATED AND DECIDED.............................. 14

c.    PLAINTIFFS HAD A FULL AND FAIR OPPORTUNITY TO LITIGATE IN THE PRIOR PROCEEDING......................... 15

d.    THE COURT'S RULING WAS NECESSARY TO SUPPORT A FINAL JUDGMENT............................................. 16

C.    THIS COURT'S OPINION & ORDER OTHERWISE BARS PLAINTIFFS' COMPLAINT RELATED TO PURPORTED BREACHES OF SECTIONS 2(B), 2(M), AND 2(N) OF THE COLLABORATION AGREEMENT ................................................................................................. 16

1.    LAW OF THE CASE BARS PLAINTIFFS' COMPLAINT ................... 17

2.    COLLATERAL ESTOPPEL BARS PLAINTIFFS' COMPLAINT........ 18

a.    THE ISSUES RELATED TO SECTIONS 2(B), 2(M), AND 2(N) OF THE COLLABORATION AGREEMENT IN THE FIRST ACTION AND SECOND ACTION ARE IDENTICAL ................................................................................................. 19

b.    THE ISSUES RELATED TO SECTIONS 2(B), 2(M), AND 2(N) OF THE COLLABORATION AGREEMENT WERE ACTUALLY LITIGATED AND DECIDED IN THE FIRST ACTION.............................................................................. 20

c.    PLAINTIFFS HAD A FULL AND FAIR OPPORTUNITY TO LITIGATE IN THE PRIOR PROCEEDING......................... 21

d.    THE COURT'S RULING WAS NECESSARY TO SUPPORT A FINAL JUDGMENT............................................. 21

D.    PLAINTIFFS OTHERWISE FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT ................................................................................................. 22

1.    PLAINTIFFS DO NOT HAVE RIGHTS TO NORRIS' INTELLECTUAL PROPERTY ............................................................. 22

2.    NORRIS HAD THE RIGHT TO PURSUE A BOOK DEAL WITH MCMEEL PUBLISHING........................................................... 23

3.    NORRIS' STATEMENTS REGARDING DEFENDANTS ARE TRUTHFUL.................................................................................. 24

4.    PLAINTIFFS HAVE UNCLEAN HANDS ............................................. 24

5.    PLAINTIFFS CLAIMS FOR CONSEQUENTIAL DAMAGES ARE WITHOUT SUPPORT IN THE COLLABORATION AGREEMENT ................................................................................................. 25

V.    CONCLUSION................................................................................................. 26

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
    Civ. No. 19-cv-10067 (PAE), 2023 WL 4249356 (S.D.N.Y. June 29, 2023) ..........................8

*Anders v. Verizon Comm'ns, Inc.*,
    Civ. No. 16-cv-5654 (VSB), 2018 WL 2727883 (S.D.N.Y. June 5, 2018)...........................24

*Barter House, Inc. v. Infinity Spirits, LLC*,
    Civ. No. 17-cv-9276 (PAE), 2019 WL 3554584 (S.D.N.Y. Aug. 9, 2019)............................23

*Ciamara Corp. v. Widealab, Inc.*,
    Civ. No. 13-cv-1142 (JMF), 2013 WL 6331927 (S.D.N.Y. Dec. 5, 2013) ...........................25

*Clarex Ltd. v. Natixis Sec. Americas LLC*,
    Civ. No. 12-cv-7908 (PAE), 2013 WL 3892898 (S.D.N.Y. July 29, 2013).............................9

*Corrado v. New York Unified Ct. Sys.*,
    163 F. Supp. 3d 1 (S.D.N.Y. 2016), *aff'd*, 698 F. App'x 36 (2d Cir. 2017).............................9

*Gomez v. New York City Dep't of Educ.*,
    Civ. No. 21-cv-01771 (AT) (SN), 2022 WL 6564737 (S.D.N.Y. Aug. 15, 2022) .................10

*Hamlen v. Gateway Energy Servs. Corp.*,
    Civ. No. 16-cv-3526 (VB), 2018 WL 1568761 (S.D.N.Y. Mar. 29, 2018)............................10

*Jennings v. City of New York*,
    Civ. No. 22-cv-1885 (GHW) (SLC), 2023 WL 8462739 (S.D.N.Y. Nov. 22, 2023)........11, 12

*Liau v. Weee! Inc.*,
    Civ. No. 23-cv-1177 (PAE), 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024)
    ...................................................................................................................................................8

*Lobaito v. Fin. Indus. Regulatory Auth., Inc.*,
    Civ. No. 13-cv-6011 (GBD) (HBP), 2014 WL 4470423 (S.D.N.Y. Sept. 9, 2014),
    *aff'd*, 599 F. App'x 400 (2d Cir, 2015)...................................................................................13

*Melito v. Am. Eagle Outfitters, Inc.*,
    Civ. No. 14-cv-2440 (VEC), 2016 WL 6584482 (S.D.N.Y. Nov. 7, 2016) ...........................18

*Mohammed v. Bin Tarraf*,
    300 F. App'x 87 (2d Cir. 2008) .............................................................................................18

*Olsen v. Sherry Netherland, Inc.*,
    Civ. No. 20-cv-00103 (PGG) (SN), 2022 WL 6561378 (S.D.N.Y. Jan. 21, 2022).....13, 17, 19

*Platform Real Estate Inc. v. United States Sec. & Exch. Comm'n*,
   Civ. No. 19-cv-2575 (LAP), 2020 WL 4482632 (S.D.N.Y. Aug. 3, 2020) ..................... 14, 20

*Rashid v. O'Neill-Levy*,
   Civ. No. 23-cv-02670 (JPC) (SN), 2023 WL 9955699 (S.D.N.Y. Nov. 30, 2023) ................. 9

*Spoleto Corp. v. Ethiopian Airlines Grp.*,
   Civ. No. 21-cv-5407 (PAE), 2022 WL 329265 (S.D.N.Y. Feb. 3, 2022),
   *aff'd*, Civ. No. 22-311, 2022 WL 17574469 (2d Cir. 2022) ............................................... 16, 21

*Transcience Corp. v. Big Time Toys, LLC*,
   50 F. Supp. 3d 441 (S.D.N.Y. 2014) ..................................................................................... 25

*Tutor Perini Bldg. Corp. v. New York City Reg'l Ctr. LLC*,
   525 F. Supp. 3d 482 (S.D.N.Y. 2021) .............................................................................. 15, 21

### STATE CASES

*Jamal v. Caroline Garden Tenants Corp.*,
   173 A.D.3d 843 (2d Dep't 2019) ........................................................................................... 10

*Lama Holding Co. v. Smith Barney*,
   88 N.Y.2d 413 (1996) ............................................................................................................ 25

### FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 8, 9

Fed. R. Civ. P. 13(a) ................................................................................................................... 15

Fed. R. Civ. P. 13(a)(1) ............................................................................................................... 12

Fed. R. Civ. P. 15(a)(2) ...................................................................................................... 1, 13, 14

## I.    **INTRODUCTION**

Defendant Alexander Norris ("Defendant" or "Norris"), through their undersigned counsel, hereby respectfully submits this Memorandum of Law in Opposition to Plaintiffs Marc Goldner ("Goldner"), Golden Bell Entertainment, LLC ("Golden Bell Entertainment"), and Golden Bell Studios, LLC ("Golden Bell Studios") (collectively, "Plaintiffs")'s Motion to Amend pursuant to Fed. R. Civ. P. 15(a)(2) (the "Motion").

## II.    **PRELIMINARY STATEMENT**

Unsatisfied with this Court's prior decision (1) correctly holding that Plaintiffs have been aware (since *at least* October 21, 2017) of all facts underlying certain compulsory counterclaims and (2) correctly holding that Plaintiffs failed to timely bring those compulsory counterclaims, Plaintiffs, in clear defiance of this Court's prior decision, are now requesting this Court to permit them to bring those *exact* compulsory counterclaims in this Action. Further compounding Plaintiffs' audacious position, Plaintiffs, through the maintenance of this Action, seek to also impermissibly relitigate and challenge this Court's prior liability rulings by continuing to put forth allegations surrounding the interpretation of the parties' Collaboration Agreement that this Court categorically rejected. Because Plaintiffs had every ability, opportunity, and obligation to bring compulsory counterclaims in the parties' other proceeding, Plaintiffs cannot use this Action to bring those compulsory counterclaims packaged as a new Complaint as opposed to compulsory counterclaims. For no less than three overarching reasons, Plaintiffs' Motion For Leave To Amend should be denied as Plaintiffs' Proposed Amended Complaint is entirely futile.

*One*, the well-accepted doctrine of "law of the case" prevents Plaintiffs from relitigating this Court's prior decisions denying them the ability to bring their compulsory counterclaims and interpreting the Collaboration Agreement because (1) Plaintiffs had a full, fair and complete opportunity to bring those compulsory counterclaims in the parties' prior proceeding, and (2)

Plaintiffs had a full, fair and complete opportunity to brief their position on the interpretation of the Collaboration Agreement. What's more, the Proposed Amended Complaint does not allege any new facts that would warrant this Court to review its prior decisions.

*Two*, similarly, the well-accepted doctrine of collateral estoppel also prevents Plaintiffs from relitigating this Court's prior decision denying them the ability to bring their compulsory counterclaims and decision interpreting the Collaboration Agreement because: (1) the issues addressed in the prior decisions on the compulsory counterclaims and the interpretation of the Collaboration Agreement and the issues raised in the Complaint are identical; (2) Plaintiffs previously litigated whether they were entitled to bring their belated, compulsory counterclaims and their position on the correct interpretation of the Collaboration Agreement; (3) Plaintiffs previously had a full and fair opportunity to bring their compulsory counterclaims and to brief their position on the correct interpretation of the Collaboration Agreement, and (4) this Court's prior decisions denying Plaintiffs the ability to bring compulsory counterclaims and interpreting the Collaboration Agreement were necessary for a final judgment in the parties' prior proceeding.

*Three*, even if this Court were to conclude that this Court's prior decisions do not categorically preclude the Proposed Amended Complaint, on the merits, the Proposed Amended Complaint still fails to plausibly plead that Norris breached the Collaboration Agreement because (1) Plaintiffs do not have rights to the intellectual property underlying their breach of contract claim, (2) the Collaboration Agreement provided Norris with every right to pursue their own intellectual property outside the scope of the Collaboration Agreement, (3) Norris truthfully spoke about Plaintiffs' misappropriation of their intellectual property, (4) Plaintiffs have unclean hands in making the parties' working relationship public, and (5) the Collaboration Agreement does not contemplate awarding Plaintiffs consequential damages.

For these reasons, the Court should deny the Motion in its entirety.

## III.    STATEMENT OF RELEVANT FACTS

### A.    THE FIRST ACTION[1]

On June 12, 2019, Norris filed a Complaint alleging, *inter alia*, copyright infringement, breach of contract, and false designation of origin resulting from Plaintiffs' willful infringement of Norris' intellectual property.[2] *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 1. On August 6, 2020, in response to Plaintiffs' new acts of infringement upon Norris' intellectual property, Norris filed a Supplemental Complaint. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 39.

### B.    PLAINTIFFS' BELATED ATTEMPTS TO ASSERT COMPULSORY COUNTERCLAIMS

On October 6, 2022, Plaintiffs made a Motion For Leave To Amend Their Answer (the "First Motion"). *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. Nos. 111-114. On November 16, 2022, Norris opposed the First Motion. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 122. On December 16, 2022, Plaintiffs submitted a reply in further support of the First Motion. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. Nos. 133-134.

### C.    THIS COURT'S DECISION DENYING PLAINTIFFS' ABILITY TO BRING AFFIRMATIVE COMPULSORY COUNTERCLAIMS IN THE FIRST ACTION

On March 7, 2023, this Court denied the First Motion and in doing so held:

This letter directly contradicts Defendants' claim that they first learned of the breach of the book option provision of the agreement on the eve of the October 28, 2021 settlement conference. Tellingly, Defendants' reply brief avoids this subject entirely. This apparent misrepresentation in Defendants' briefing is concerning.

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 138 at 7.

Defendants have failed to demonstrate diligence and have left unrebutted the March

---

[1] The "First Action" refers to Civ. No. 1:19-cv-05491 (PAE) (SN).

[2] Norris assumes this Court's familiarity with the facts related to the parties' and the Collaboration Agreement. In the interest of judicial economy, Norris will only address those facts which are pertinent to this Motion.

> 2019 letter showing that their proposed amendments are based entirely on information they knew in advance of the deadline to amend. Therefore, Defendants have failed to meet their burden of demonstrating good cause for allowing amendment at this late date.

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 138 at 8.

> The Court does not look kindly on what is essentially an ultimatum disguised as an appeal to judicial economy. Rule 16 empowers the Court to manage a litigation by identifying and clarifying issues before trial. A chess player simplifies the board by eliminating pieces in anticipation of the endgame. The Federal Rules envision a similar course for federal litigation - the court and the parties must work together to narrow the scope of contested issues before finally presenting them at trial. Defendants seek to add new pieces to the board at the end of the game, simply because it no longer suits them to hold those pieces in abeyance. The Court declines to allow them that opportunity.

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 138 at 9.

### D.    THE PARTIES' EXTENSIVE SUMMARY JUDGMENT BRIEFING

On October 17, 2022, Norris moved for partial summary judgment in the First Action. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. Nos. 117-120. On November 16, 2022, Plaintiffs cross-moved for summary judgment in the First Action. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. Nos. 123-129. On December 16, 2022, Norris opposed Plaintiffs' cross-motion for summary judgment and submitted a reply in further support of their motion for summary judgment. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. Nos. 130-132. On January 6, 2023, Plaintiffs submitted their reply in further support of their cross-motion for summary judgment. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 136.

### E.    RELEVANT PORTIONS OF THIS COURT'S REPORT & RECOMMENDATION

On May 22, 2023, this Court issued a Report and Recommendation resolving the parties' cross-motions for summary judgment. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 146.

#### 1.    SCOPE OF THE COLLABORATION AGREEMENT

It is undisputed that in submitting the '369 Application and the '795 Application,

Defendants copied Plaintiff's copyrighted work. Defendants' arguments in opposition are based not on fact but on a fantastical and incorrect reading of the [Collaboration] Agreement. The terms of the [Collaboration] Agreement that Defendants reply upon are unambiguous and no reasonable jury could interpret them in the way Defendants seek to do. Accordingly, the Court should grant summary judgment on Count One in favor of Plaintiff.

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 146 at 14-15.

### 2.    SECTION 1(A) OF THE COLLABORATION AGREEMENT

Section 1(A) is explicitly limited to the WORKS, which the [Collaboration] Agreement defines as "the properties tentatively titled 'Webcomic Name Game' and 'Webcomic Name Stuffed Animals' …and any tie-ins, spinoffs, or other commercial development of the WORKS such as Sequels, Prequels, Reboots, Remakes, and Expansions." The screenshots at issue at unrelated to the WORKS, as they involve Plaintiff's existing brand and artwork, not the game and plush toys the parties intended to create.

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 146 at 12.

### 3.    SECTION 1(C) OF THE COLLABORATION AGREEMENT

Section 1(C) obligates Plaintiff to transfer to Defendants any potential new work that infringes on any of Defendants' copyrighted properties. This section does not effectuate any assignment of rights from Plaintiff to Defendants. It is also limited to "new work" created by Plaintiff, and it is not alleged that any of the material in the screenshots was created after the [Collaboration] Agreement's execution.

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 146 at 12.

### 4.    SECTION 2(B) OF THE COLLABORATION AGREEMENT

Section 2(B) states that the parties will share the proceeds from the WORKS and the rights, interests, and license therein and respect thereto. It then lists a non-exhaustive series of rights that this includes, such as "Comic Book Rights." This section is plainly limited to the WORKS and the rights therein and with respect thereto and could, for example, cover the sharing of proceeds and rights to a hypothetical Webcomic Name Game themed comic book. By its terms[,] it would not cover a more generic Webcomic Name comic book. Thus, as with Section 1(A), this section has no relation to the screenshots of Plaintiff's existing branding and artwork.

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 146 at 12-13.

### 5.    SECTION 2(C) OF THE COLLABORATION AGREEMENT

Section 2(C) grants Defendants ownership of original artwork used and created for

the WORKS, and while it is not disputed that *some* artwork was created for that purpose, it is not alleged that any of the copyrighted materials in the screenshots fits that description. Defendants have merely asserted that some of the files delivered to them by Plaintiff contained several characters seen in the screenshots, and have failed to explain how this would entitle them to ownership of the characters themselves as opposed to the specific depictions of the characters they received.

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 146 at 13.

## 6.    SECTION 3(C) OF THE COLLABORATION AGREEMENT

Section 3(C)'s first sentence provides that "ARTIST shall submit to COMPANY all sequels to the WORKS or other works using characters that appear in the WORKS and any other unrelated characters." This sentence cries out for a comma, because what is to be submitted by Plaintiff could be read in a number of ways depending on how the sentence is parsed. However, in any possible reading the verb "submit" does not convey rights from Plaintiff to Defendants. It instead contemplates a scenario wherein Plaintiff creates either a sequel to the WORKS or an entirely different work involving the same characters as the WORKS and requires them to "submit" that work to Defendants. The section's final sentence confirms the lack of any conveyance by providing that *if* the Defendants *were to acquire* such a submitted work, the provisions of the [Collaboration] Agreement would also apply to it.

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 146 at 13-14.

## F.    RELEVANT PORTIONS OF THIS COURT'S OPINION & ORDE

On August 24, 2023, this Court issued an Opinion & Order adopting in large part this

Court's Report & Recommendation. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 150.

## 1.    SECTION 1(H) OF THE COLLABORATION AGREEMENT

And Section 1(H) preserves for Norris the right to pursue his Comic 'Webcomic Name' outside of the context of this [Collaboration Agreement].

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 150 at 20.

## 2.    SECTION 2(D) OF THE COLLABORATION AGREEMENT

By its terms, however, Section 2(D) does not assist [Plaintiffs]. It gives [Golden Bell Entertainment] access to Norris's online accounts; but it does not transfer ownership over the assets therein or give [Golden Bell Entertainment] a license for future use of those assets. And it is ownership or a license that [Defendants] require, not mere access. [Golden Bell Entertainment]'s "administrative privileges" do not stretch so far.

6

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 150 at 21.

### 3.    SECTION 3(C) OF THE COLLABORATION AGREEMENT

Aspects of Section 3(C) of the [Collaboration Agreement] are indeed broadly worded. But [D]efendants' sweeping construction - under which Norris would have effectively ceded to [D]efendants the copyright interests to all future works - overlooks parts of the [Collaboration Agreement] in tension, or incompatible with, that reading. For one, the third sentence of Section 3(C) itself makes clear that the [Collaboration Agreement] does not categorically so apply, stating that the provisions of this [Collaboration Agreement] apply if [Golden Bell Entertainment] acquires the NEW WORK.

In light of these principles, the second sentence of Section 3(C) is best read in conjunction with the third; that is, *if* [Golden Bell] Entertainment acquires Norris's future works, *then* it must, with due diligence, copyright those works, and split profits per the preexisting agreement. The first sentence, which obliges Norris to "submit" work to [Golden Bell] Entertainment for its further consideration, and possible negotiation and acquisition, bolsters that common-sense conclusion. Defendants' interpretation, in contrast, would short-circuit that process, or make it purposeless. There would appear to be nothing to negotiate about (or to acquire) had Norris's title over the artworks already passed to [D]efendants, with the same percentages and profit splits as discussed above applicable. And that reading would also effectively void Norris's contractual right to pursue his Comic 'Webcomic Name' outside the context of [the Collaboration Agreement].

*See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 150 at 20-21.

### G.    ALLEGATIONS IN THE PROPOSED AMENDED COMPLAINT

In the proposed Amended Complaint, Plaintiffs allege that Norris breached the Collaboration Agreement in nine ways: (1) that Norris breached Sections I(G), 4(G), and 3(B) of the Collaboration Agreement by failing to provide final files, (2) that Norris breached Section 2(A) of the Collaboration Agreement by refusing to and failing to work on the files collaboratively with Defendants, (3) that Norris breached Section 2(B) of the Collaboration Agreement by producing t-shirts on their own without sharing proceeds with Plaintiffs, (4) that Norris breached Section 2(D) of the Collaboration Agreement by preventing Plaintiffs from having any access to Norris' social media accounts, (5) that Norris breached Section 2(G) of the Collaboration Agreement by

failing to keep the working relationship confidential, (6) that Norris breached Section 2(M) of the Collaboration Agreement by monetizing works that Defendants purportedly had rights to monetize, (7) that Norris breached Section 2(N)[3] of the Collaboration Agreement by publishing "Blob Erotica," (8) that Norris breached Section 3(D) of the Collaboration Agreement by publishing the "Oh No" book, and (9) that Norris breached Section 4(E) of the Collaboration Agreement by making disparaging comments regarding Defendants. *See*, *e.g.*, Doc. 56.3 at ¶¶ 48-67.

## IV.    ARGUMENT

### A.    LEGAL STANDARD ON MOTION FOR LEAVE TO AMEND

"Leave to amend shall be freely given when justice so requires. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. … Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In assessing whether the proposed complaint states a claim, courts consider the proposed amendments along with the remainder of the complaint, accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief. But where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.,* Civ. No. 19-cv-10067 (PAE), 2023 WL 4249356, at *8 (S.D.N.Y. June 29, 2023) (internal citations and quotations omitted). *See also*, *Liau v. Weee! Inc*., Civ. No. 23-cv-1177 (PAE), 2024 WL 729259, at *7

---

[3] For the Court's ease, in the complaint, Plaintiffs mislabeled Section 2(A) of the Collaboration Agreement as Section 2(N), which provides "CREATOR may not create unaffiliated work that has the potential to damage the WORKS. This will be subjectively decided by the COMPANY based on whether any unaffiliated work is either inappropriate, damaging to the brand, or may potentially impede on any sales of WORKS or properties of COMPANY."

(S.D.N.Y. Feb. 22, 2024) ("… it is within the sound discretion of the district court to grant or deny leave to amend.") (internal citations and quotations omitted); *Rashid v. O'Neill-Levy*, Civ. No. 23-cv-02670 (JPC) (SN), 2023 WL 9955699, at *3 (S.D.N.Y. Nov. 30, 2023) ("Nonetheless, leave to amend may be denied when amendment would be futile.") (internal citations and quotations omitted), *report and recommendations adopted,* Civ. No. 23-cv-02670 (JPC) (SN), 2024 WL 687289 (S.D.N.Y. Feb. 20, 2024); *Clarex Ltd. v. Natixis Sec. Americas LLC*, Civ. No. 12-cv-7908 (PAE), 2013 WL 3892898, at *4 (S.D.N.Y. July 29, 2013) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).") (internal citations and quotations omitted).

### B.    THIS COURT'S PRIOR DECISION DENYING PLAINTIFFS' MOTION TO BRING COMPULSORY COUNTERCLAIMS IN THE FIRST ACTION BARS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY

The issues raised in Plaintiffs' Motion are already the subject of an order from this Court in the First Action. As a result, the well-accepted doctrines of "law of the case" and collateral estoppel constitute a complete bar to Plaintiffs' complaint in the Second Action. Indeed, this Court previously ruled: 1) that Plaintiffs had a full, complete opportunity to bring compulsory counterclaims in the First Action, and 2) that Plaintiffs failed to timely bring those compulsory counterclaims. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 138 at 7-9. Plainly, Plaintiffs cannot use the Second Action to arbitrarily take another bite at the apple and relitigate stale compulsory counterclaims.

Under New York law, "[t]he law of the case doctrine provides that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case. … However, this discretion is limited, as the doctrine may be properly invoked only if the parties had a full and fair opportunity to litigate the initial determination." *Corrado v. New York Unified Ct. Sys.*, 163 F. Supp. 3d 1, 16 (S.D.N.Y. 2016) (internal citations and quotations

omitted), *aff'd*, 698 F. App'x 36 (2d Cir. 2017). *See also*, *Hamlen v. Gateway Energy Servs. Corp.*, Civ. No. 16-cv-3526 (VB), 2018 WL 1568761, at *2 (S.D.N.Y. Mar. 29, 2018) ("The law of the case doctrine is intended to keep rulings consistent throughout a litigation. This purpose is served by maintaining consistent rulings through all stages of the case, regardless of the judge making the determination or whether that judge has life-tenure.") (internal citations and quotations omitted). Further, it is well-accepted that "[c]ollateral estoppel, or issue preclusion, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party whether or not the tribunals or causes of action are the same. The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action. The party seeking to invoke the doctrine has the burden of demonstrating that the issues are identical and were necessarily decided in the prior action, and the party opposing its use has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action." *Gomez v. New York City Dep't of Educ.*, Civ. No. 21-cv-01771 (AT) (SN), 2022 WL 6564737, at *5 (S.D.N.Y. Aug. 15, 2022) (internal citations and quotations omitted), *report and recommendation adopted*, Civ. No. 21-cv-01771 (AT) (SN), 2022 WL 4298728 (S.D.N.Y. Sept. 19, 2022). *See also*, *Jamal v. Caroline Garden Tenants Corp.*, 173 A.D.3d 843, 843 (2d Dep't 2019) ("The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action.") (internal citations and quotations omitted). Here, the record speaks for itself in that (i) Plaintiffs had every opportunity to litigate and bring affirmative contract claims in the First Action, (ii) Plaintiffs had

10

every opportunity to brief why they should nevertheless be permitted to bring compulsory counterclaims; (iii) Plaintiffs effectively waived their ability to bring compulsory counterclaims, and (iv) the issues raised in the Second Action are identical to the issues raised in the First Motion. Nevertheless, in clear defiance of this Court's decision, Plaintiffs unequivocally displeased with this Court's liability determination, continue to add pieces to the chess board of this ongoing saga through the initiation and maintenance of the Second Action. Because Plaintiffs were afforded every opportunity in the First Action to bring their compulsory counterclaims, the Court should deny the Motion in its entirety.

## 1.    LAW OF THE CASE BARS PLAINTIFFS' COMPLAINT

The well-established doctrine of "law of the case" bars Plaintiffs' Complaint in its entirety because Plaintiffs had *every* opportunity to litigate their compulsory counterclaims in the First Action (*the* issue raised in the Motion), and this Court was correct to find that Plaintiffs had no excuse for their significant delay in bringing those compulsory counterclaims. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 138 at 7-9. "Under the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation. The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Jennings v. City of New York*, Civ. No. 22-cv-1885 (GHW) (SLC), 2023 WL 8462739, at *3 (S.D.N.Y. Nov. 22, 2023), *report and recommendation adopted*, No. 22-cv-1885 (GHW (SLC), 2023 WL 8462740 (S.D.N.Y. Dec. 7, 2023). Here, as detailed above, the Court has already ruled that Plaintiffs are estopped from bringing compulsory counterclaims because Plaintiffs have been aware of the facts underlying their compulsory counterclaims since *at least* October 21, 2017 and failed to bring those compulsory counterclaims. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 138 at 7-9. What's more, Plaintiffs' affirmative contract claims

were and still are compulsory counterclaims that Plaintiffs had to bring in the First Action. *See*, *e.g.*, Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."). Like *Jennings*, this Court should apply the "law of the case" doctrine to bar the Second Action because **after** affording Plaintiffs a full and fair opportunity to bring compulsory counterclaims, this Court found that Plaintiffs sat on these claims. *See*, *e.g.*, *Jennings*, 2023 WL 8462739, at *3. *See also*, Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 138 at 7-9. Further, there exists no compelling reason to change this Court's prior ruling on the First Motion because there have been no changes in either the underlying facts or the law that this Court did not consider when deciding the First Motion. Indeed, Plaintiffs simply took their proposed compulsory counterclaims and submitted them as the Complaint in the Second Action. Based on the above, Plaintiffs cannot use the Second Action to relitigate issues that were decided in the First Action or could have been decided in the First Action simply because they disagree with this Court's decision in the First Action.

## 2.    COLLATERAL ESTOPPEL BARS PLAINTIFFS' COMPLAINT

Compounding the futility of the Second Action, collateral estoppel also necessitates denying the Motion because the allegations contained in the proposed compulsory counterclaims in the First Action and the allegations in the Second Action are identical, those issues were fully litigated and decided in the First Action, Plaintiffs had a full and fair opportunity (and every incentive) to litigate in the First Action, and the decision on the First Motion was necessary to support a final judgment in the First Action.

**a.    THE ISSUES IN THE FIRST ACTION AND SECOND ACTION ARE IDENTICAL**

There can be no real dispute that the allegations contained in the proposed compulsory counterclaims in the First Action and the allegations in the Second Action are identical because they both center around Norris' purported breaches of the Collaboration Agreement. *Compare*, Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 113, Doc. No. 56. New York law defines an issue as "[a] single, certain and material point arising out of the allegations and contentions of the parties. It may concern only the existence or non-existence of certain facts, or it may concern the legal significance of those facts. If the issues are merely factual, they need only deal with the same past events to be considered identical. However, if they concern the legal significance of those facts, the legal standards to be applied must also be identical; different legal standards as applied to the same set of facts create different issues." *Olsen v. Sherry Netherland*, *Inc.*, Civ. No. 20-cv-00103 (PGG) (SN), 2022 WL 6561378, at *6 (S.D.N.Y. Jan. 21, 2022) (internal citations and quotations omitted), *report and recommendation adopted*, Civ. No. 20-cv-0103 (PGG) (SN), 2022 WL 4592999 (S.D.N.Y. Sept. 30, 2022), *reconsideration denied*, Civ. No. 20-cv-0103 (PGG) (SN), 2024 WL 2054816 (S.D.N.Y. May 7, 2024). *See also*, *Lobaito v. Fin. Indus. Regulatory Auth., Inc.*, Civ. No. 13-cv-6011 (GBD) (HBP), 2014 WL 4470423, at *11 (S.D.N.Y. Sept. 9, 2014) ("Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.") (internal citations and quotations omitted), *aff'd*, 599 F. App'x 400 (2d Cir, 2015). Here, the same legal standards apply to the First Motion and this Motion - the well-established standards concerning motions brought under Fed. R. Civ. P. 15(a)(2). *Compare*, Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 113, Doc. No. 56. Here, this Court is applying the same legal standard to the same set of facts - Norris' purported breaches of the Collaboration Agreement. By way of

limited example of the duplication of issues across the First Action and Second Action, in the First Action, Plaintiffs sought to bring a compulsory counterclaim for breach of contract related to Norris' purported failure to deliver 'final game files' and in the Second Action, Plaintiffs seek to bring *the same* breach of contract claim related to Norris' purported failure to deliver 'final game files.' *Compare*, Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 113 at ¶¶ 47 - 59, Doc. No. 56.3 at ¶¶ 48 - 67. Based on the above, there can be no real dispute that the legal issues, whether to grant leave to amend under Fed. R. Civ. P. 15(a)(2), across the First Action and Second Action are identical, and that the factual allegations contained in proposed compulsory counterclaims in the First Action and the allegations in the Proposed Amended Complaint in the Second Action are identical. *Compare*, Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 113 at ¶¶ 47 - 59, Doc. No. 56.3 at ¶¶ 48 - 67. Therefore, Plaintiffs should be precluded from relitigating their compulsory counterclaims contained in the proposed compulsory counterclaims in the First Action through the maintenance of the Second Action simply because Plaintiffs disagree with this Court's decision.

### b.    THE ISSUES IN THE FIRST ACTION WERE ACTUALLY LITIGATED AND DECIDED

There can be no real dispute that Plaintiffs litigated the issues contained in the proposed compulsory counterclaims in the First Action, and the Court decided the First Motion. Indeed, as detailed above, there was robust briefing on whether Plaintiffs were entitled to bring delayed compulsory counterclaims in the First Action. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. Nos. 111 - 114, 122, 133. *See, e.g., Platform Real Estate Inc. v. United States Sec. & Exch. Comm'n*, Civ. No. 19-cv-2575 (LAP), 2020 WL 4482632, at *5 (S.D.N.Y. Aug. 3, 2020) ("Because the sole issue Platform raises in this action was actually litigated and necessarily decided in the earlier case, collateral estoppel compels dismissal of the Complaint."). Subsequently, this Court issued a ruling denying the First Motion because Plaintiffs had been aware of the underlying facts that would

serve as the basis for the compulsory counterclaims in the First Action for several years and failed to timely bring the compulsory counterclaims. *See*, *e.g.*, Doc. No. 138 at 5 - 7. Based on the above, the issues raised in the First Action were actually litigated and decided. Therefore, Plaintiffs should be precluded from relitigating their affirmative contract claims contained in the proposed compulsory counterclaims in the First Action through the maintenance of the Second Action simply because Plaintiffs disagree with this Court's decision.

c.    **PLAINTIFFS HAD A FULL AND FAIR OPPORTUNITY TO LITIGATE IN THE PRIOR PROCEEDING**

There can be no real dispute that Plaintiffs had *every* opportunity to litigate and bring compulsory counterclaims in the First Action and did in fact litigate their ability to bring delayed compulsory counterclaims in the First Action. Specifically, in denying the First Motion, this Court recognized that Plaintiffs brought the First Motion *after* the parties had expressed their intent to move for summary judgment, had been aware of Defendants' book deal with Andrews McMeel (the *same* book deal at issue in the Second Action) since *at least* October 21, 2017, and seemingly had made a strategic decision *not* to bring counterclaims in the First Action despite them being compulsory counterclaims. *See*, *e.g.*, Doc. No. 138 at 5 - 7. *See*, *e.g.*, *Tutor Perini Bldg. Corp. v. New York City Reg'l Ctr. LLC,* 525 F. Supp. 3d 482, 514 (S.D.N.Y. 2021) ("Nor is there any question that TPBC had a full and fair opportunity to litigate the issue before the bankruptcy court. That court chronicled the exhaustiveness of the parties' litigation over the question."). *See also*, Fed. R. Civ. P. 13(a). Based on the above, there can be no real dispute that Plaintiffs had a full and fair opportunity to bring and to litigate their compulsory counterclaims in the First Action, but strategically chose not to bring them in the First Action. Therefore, Plaintiffs should be precluded from relitigating their affirmative contract claims contained in the proposed compulsory counterclaims in the First Action through the maintenance of the Second Action simply because

15

Plaintiffs disagree with this Court's decision.

### d.    THE COURT'S RULING WAS NECESSARY TO SUPPORT A FINAL JUDGMENT

Finally, there can be no real dispute that the Court's decision on the First Motion was necessary to support a final judgment in the First Action because, as the Court recognized, Plaintiffs sought to add more pieces to the chess board at the time the parties were prepared to move for summary judgment **well after** the close of discovery. *See also*, *Spoleto Corp. v. Ethiopian Airlines Grp.*, Civ. No. 21-cv-5407 (PAE), 2022 WL 329265, at *7 (S.D.N.Y. Feb. 3, 2022) ("Collateral estoppel is an equitable doctrine. Its invocation is influenced by considerations of fairness in the individual case.") (internal citations and quotations omitted), *aff'd*, Civ. No. 22-311, 2022 WL 17574469 (2d Cir. 2022). Importantly, once the Court denied the First Motion, that was effectively the final decision as to Plaintiffs' ability to bring their compulsory counterclaims because Plaintiffs did not ask this Court to reconsider its decision. Based on the above, there can be no real dispute that the Court's decision on the First Motion was necessary to support a final judgment in the First Action. Therefore, Plaintiffs should be precluded from relitigating their affirmative contract claims contained in the proposed compulsory counterclaims in the First Action through the maintenance of the Second Action simply because Plaintiffs disagree with this Court's decision.

### C.    THIS COURT'S OPINION & ORDER OTHERWISE BARS PLAINTIFFS' COMPLAINT RELATED TO PURPORTED BREACHES OF SECTIONS 2(B), 2(M), AND 2(N) OF THE COLLABORATION AGREEMENT

Although this Court's decision o the First Motion categorically bars the Second Action, the Court should also deny this Motion as to the purported breaches of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement because this Report & Recommendation and Court's Opinion & Order carefully determined the parties' rights and liabilities under the Collaboration Agreement:

*the* fundament issue at the core of both the First Action and Second Action and the fundament

issue at the core of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement. New York law

defines an issue as "[a] single, certain and material point arising out of the allegations and

contentions of the parties. It may concern only the existence or non-existence of certain facts, or it

may concern the legal significance of those facts. If the issues are merely factual, they need only

deal with the same past events to be considered identical. However, if they concern the legal

significance of those facts, the legal standards to be applied must also be identical; different legal

standards as applied to the same set of facts create different issues." *Olsen*, 2022 WL 6561378, at

\*6 (internal citations and quotation omitted). Here, Plaintiffs (again) are using the Second Action

to relitigate this Court's interpretation of the Collaboration Agreement *despite* litigating that exact

issue for nearly four years in the First Action and *without* presenting this Court with *any* new

information that could have been raised in the First Action simply because Plaintiffs disagree with

this Court's Report & Recommendation and Opinion & Order.[4] Because Plaintiffs cannot use the

Second Action to relitigate this Court's Report & Recommendation and Opinion & Order, this

Court should deny the Second Motion as to the purported breaches of Sections 2(B), 2(M), and

2(N) of the Collaboration Agreement.

## 1.    LAW OF THE CASE BARS PLAINTIFFS' COMPLAINT

At base, this Court should apply the Report & Recommendation and Opinion & Order's

related to the interpretation of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement to

the Second Action because Plaintiffs cannot use the Second Action to relitigate the interpretation

of the Collaboration Agreement. "The law of the case doctrine commands that when a court has

---

[4] As Norris made this Court aware, Plaintiffs commenced the Second Action *after* this Court issued the Report &
Recommendation as a hedge that the Opinion & Order would also side with Norris, and to continue requiring Norris
to litigate every aspect of the First Action.

ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise. … The law of the case doctrine may be properly invoked only if the parties had a full and fair opportunity to litigate the initial determination." *Melito v. Am. Eagle Outfitters, Inc*., Civ. No. 14-cv-2440 (VEC), 2016 WL 6584482, at \*1 (S.D.N.Y. Nov. 7, 2016) (internal citations and quotations omitted). *See also*, *Mohammed v. Bin Tarraf*, 300 F. App'x 87, 89 (2d Cir. 2008) ("The district court was therefore correct to dismiss Mohammad's complaint under law of the case. To the extent the plaintiff seeks to relitigate the claims that were previously dismissed for want of subject matter jurisdiction, moreover, he provides no reason why we should overrule our previous conclusion, by which we are bound, that we have no such jurisdiction.") (internal citations omitted). Here, following extensive, robust briefing and ***four years*** of active litigation, this Court ruled that the Collaboration Agreement only contemplated providing Plaintiffs with rights to the WORKS (the plush toy and tabletop game) – neither of which were created. Now, despite this Court's prior rulings, Plaintiffs want this Court to issue an effectively inconsistent ruling and broaden its interpretation of the Collaboration Agreement, particularly as to Sections 2(B), 2(M), and 2(N). Consequently, this Court should apply its prior interpretation of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement, and Plaintiffs cannot use the Second Action to relitigate this Court's interpretation of the Collaboration Agreement simply because they disagree with the Court's prior orders.

### 2.    COLLATERAL ESTOPPEL BARS PLAINTIFFS' COMPLAINT

Similarly, the well-established doctrine of collateral estoppel bars Plaintiffs' Complaint as to the purported breaches of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement because the issues regarding the interpretation of the Collaboration Agreement, particularly Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement, decided through both the Report & Recommendation and the Opinion & Order and the allegations regarding Norris' purported

breaches of the Collaboration Agreement in the Second Action are identical, the issues regarding the interpretation of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement were litigated and decided through both the Report & Recommendation and the Opinion & Order, Plaintiffs had a full and fair opportunity to litigate the interpretation of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement in the First Action, and the both the Report & Recommendation and the Opinion & Order were necessary to support a final judgment in the First Action.

a.     **THE ISSUES RELATED TO SECTIONS 2(B), 2(M), AND 2(N) OF THE COLLABORATION AGREEMENT IN THE FIRST ACTION AND SECOND ACTION ARE IDENTICAL**

Fundamentally, the issues related to Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement (decided by the Report & Recommendation and the Opinion & Order), and the issues raised in the Second Action related to Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement are identical. As detailed above, New York law defines an issue as "[a] single, certain and material point arising out of the allegations and contentions of the parties. It may concern only the existence or non-existence of certain facts, or it may concern the legal significance of those facts. If the issues are merely factual, they need only deal with the same past events to be considered identical. However, if they concern the legal significance of those facts, the legal standards to be applied must also be identical; different legal standards as applied to the same set of facts create different issues." *Olsen*, 2022 WL 6561378, at *6 (internal citations and quotation omitted). In the Section Action, Plaintiffs allege that Norris breached Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement of the Collaboration Agreement. *See*, *e.g.*, Doc. 56.3 at ¶¶ 48-67. The Opinion & Order addressed the interpretation of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement. *See* Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 150 at 19-21. Based on the above, there can be no real dispute that the issued decided in the Report & Recommendation and the Opinion & Order related to Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement

and the allegations of Norris' purported breaches of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement are identical. Therefore, Plaintiffs cannot use the Second Action to relitigate this Court's Report & Recommendation and Opinion & Order related to Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement simply because Plaintiffs disagree with this Court's Report & Recommendation and Opinion & Order.

> **b.    THE ISSUES RELATED TO SECTIONS 2(B), 2(M), AND 2(N) OF THE COLLABORATION AGREEMENT WERE ACTUALLY LITIGATED AND DECIDED IN THE FIRST <u>ACTION</u>**

As this Court is well aware, Plaintiffs fully litigated, and this Court fully decided the issues related to the interpretation of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement. Indeed, the parties litigated for nearly ***four years*** and submitted extensive briefing on the issue of the interpretation of the Collaboration Agreement before the Court issued the Opinion & Order. *See*, *e.g.*, *Platform Real Estate Inc. v. United States Sec. & Exch. Comm'n*, Civ. No. 19-cv-2575 (LAP), 2020 WL 4482632, at *5 (S.D.N.Y. Aug. 3, 2020) ("Because the sole issue Platform raises in this action was actually litigated and necessarily decided in the earlier case, collateral estoppel compels dismissal of the Complaint."). *See also*, Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. Nos. 117-120, 123-129, 130-132, and 136. What's more, ***both*** the Report & Recommendation and Opinion & Order carefully detailed and addressed the parties' arguments related to Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement. *See*, *e.g.*, Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. Nos. 146 and 150. Based on the above, there can be no real dispute that the issues related to the interpretation of the Collaboration Agreement were actively litigated and thoroughly decided in the First Action. Therefore, Plaintiffs cannot use the Second Action to relitigate this Court's Report & Recommendation and Opinion & Order related to Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement simply because Plaintiffs disagree with this Court's Report &

Recommendation and Opinion & Order.

### c.    PLAINTIFFS HAD A FULL AND FAIR OPPORTUNITY TO LITIGATE IN THE PRIOR PROCEEDING

As detailed above, Plaintiffs had ***more*** than a full and fair opportunity to present their arguments regarding their interpretation of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement in the First Action. Indeed, there were competing cross-motions for summary judgment on this very issue, and motion practice related to Plaintiffs' objections to the Report & Recommendation. *See*, *e.g.*, *Perini Bldg. Corp.*, 525 F. Supp. 3d at 514 ("Nor is there any question that TPBC had a full and fair opportunity to litigate the issue before the bankruptcy court. That court chronicled the exhaustiveness of the parties' litigation over the question."). Based on the above, there can be no real dispute that the issues related to the interpretation of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement were actively litigated and thoroughly decided in the First Action. Therefore, Plaintiffs cannot use the Second Action to relitigate this Court's Report & Recommendation and Opinion & Order related to Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement simply because Plaintiffs disagree with this Court's Report & Recommendation and Opinion & Order.

### d.    THE COURT'S RULING WAS NECESSARY TO SUPPORT A FINAL JUDGMENT

This Court's Report & Recommendation and Opinion & Order were necessary to support a final judgment in the First Action because the Report & Recommendation and Opinion & Order are the final judgments as to interpretation of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement. *See*, *e.g.*, *Spoleto Corp.,* 2022 WL 329265, at *7 ("Collateral estoppel is an equitable doctrine. Its invocation is influenced by considerations of fairness in the individual case. The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the

absence of a full and fair opportunity to litigate in the prior proceeding.") (internal citations and quotations omitted). Put another way, in the First Action, the parties cannot and are no longer fighting over the interpretation of the Collaboration Agreement (including Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement). Based on the above, there can be no real dispute that the Report & Recommendation and Opinion & Order were necessary to support a final judgment in the First Action. Therefore, Plaintiffs cannot use the Second Action to relitigate this Court's Report & Recommendation and Opinion & Order related to Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement simply because Plaintiffs disagree with this Court's Report & Recommendation and Opinion & Order.

### D.    PLAINTIFFS OTHERWISE FAIL TO STATE A CLAIM FOR BREACH <u>OF CONTRACT</u>

To the extent that this Court disagrees that the doctrines of law of the case and collateral estoppel do not bar Plaintiffs' Complaint in its entirety, this Court should nevertheless deny the Motion because the Proposed Amended Complaint fails to state a claim for breach of contract for no less than three reasons. ***One***, because Plaintiffs do not have rights to Norris' intellectual property, Norris did not and could not have breached Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement – all of which are premised on Plaintiffs' false interpretation of the Collaboration Agreement. ***Two***, because the Report & Recommendation and Opinion & Order confirm that Norris' statements regarding Plaintiffs' misappropriation of Norris' intellectual property were truthful, Norris did not breach Section 4(E) of the Collaboration Agreement. ***Three***, Plaintiffs' damages claim is entirely without support in the Collaboration Agreement because it claims damages for which Plaintiffs have no entitlement - consequential damages.

### 1.    PLAINTIFFS DO NOT HAVE RIGHTS TO NORRIS' <u>INTELLECTUAL PROPERTY</u>

Norris did not breach Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement

because this Court concluded that Plaintiffs ***do not*** have expansive rights to Norris' intellectual property. "Under New York law, an action for breach of contract requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Barter House, Inc. v. Infinity Spirits, LLC*, Civ. No. 17-cv-9276 (PAE), 2019 WL 3554584, at *24 (S.D.N.Y. Aug. 9, 2019) (quotation omitted). Here, ***both*** the Report & Recommendation and Opinion & Order concluded that the Collaboration Agreement limited Plaintiffs' rights to the WORKS (the not yet created plush toy and the tabletop game), Norris did not (and indeed could not) breach Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement by purportedly monetizing their other intellectual property because Plaintiffs do not have rights to those portions of Plaintiffs' intellectual property. Therefore, because Plaintiffs cannot plead that Norris breached Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement, this Court should deny the Second Motion because the Proposed Amended Complaint does not plausibly plead its claim for breach of Sections 2(B), 2(M), and 2(N) of the Collaboration Agreement.

## 2.   NORRIS HAD THE RIGHT TO PURSUE A BOOK DEAL WITH MCMEEL PUBLISHING

The Proposed Amended Complaint does not plausibly plead that Norris breached Section 3(D) of the Collaboration Agreement because the Opinion & Order held that Section 1(H) of the Collaboration Agreement expressly allowed for Norris to pursue their 'Webcomic Name' comic outside of the context of the Collaboration Agreement. Simply, Norris did not (and indeed could not) breach Section 3(D) of the Collaboration Agreement by publishing the "Oh No" book because the "Oh No" book was not part of the rights contemplated under the Collaboration Agreement. *See also*, *Ebel v. G/O Media, Inc*., Civ. No. 20-cv-7483 (PAE), 2021 WL 2827903, at *7 ("As the Court held, to plausibly allege a breach, a party must identify the specific provisions of the contract

upon which liability is predicated.") (internal citations and quotations omitted). Therefore, because Plaintiffs cannot plead that Norris breached Section 3(D) of the Collaboration Agreement, this Court should deny the Second Motion because the Proposed Amended Complaint does not plausibly plead its claim for breach of Section 3(D) of the Collaboration Agreement.

### 3.   NORRIS' STATEMENTS REGARDING DEFENDANTS ARE TRUTHFUL

Norris did not breach Section 4(E) of the Collaboration Agreement by purportedly making disparaging comments related to Plaintiffs because the Report & Recommendation and Opinion & Order confirm that Plaintiffs did in fact misappropriate Plaintiffs' intellectual property. It is axiomatic that: "[u]nder New York law, for a successful breach of contract claim, a plaintiff must show (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other, and (4) damages. A sufficient pleading for breach of contract must, at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion." *Anders v. Verizon Comm'ns, Inc.*, Civ. No. 16-cv-5654 (VSB), 2018 WL 2727883, at *8 (S.D.N.Y. June 5, 2018) (internal citations and quotations omitted). Here, the Report & Recommendation and Opinion & Order found Plaintiffs' liable for copyright infringement through their misappropriation of Norris' intellectual property. *See*, *e.g.*, Civ. No. 1:19-cv-05491 (PAE) (SN), Doc. No. 150. Therefore, Norris' statements related to Plaintiffs are truthful because the Report & Recommendation and Opinion & Order confirm that Plaintiffs did in fact misappropriate Plaintiffs' intellectual property. Thus, the Proposed Amended Complaint does not plausibly plead its claim for breach of the Section 4(E) of the Collaboration Agreement.

### 4.   PLAINTIFFS HAVE UNCLEAN HANDS

The Proposed Amended Complaint fails to plausibly plead that Norris breached Section 2(G) of the Collaboration Agreement by purportedly failing to keep the working

relationship confidential because through the filing of the Second Action, Plaintiffs also breached Section 2(G) of the Collaboration Agreement. *See*, *e.g.*, *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 451 (S.D.N.Y. 2014) ("A claimant's failure to plead the performance of its own contractual obligations is fatal to a breach of contract claim even if the other requisite elements are properly pleaded.") (internal citations and quotations omitted). Because the Proposed Amended Complaint does not and cannot plausibly allege that Plaintiffs fully performed under the Collaboration Agreement by keeping the working relationship confidential, the Proposed Amended Complaint fails to not plausibly plead its claim for breach of the Section 2(G) of the Collaboration Agreement.

### 5.    PLAINTIFFS CLAIMS FOR CONSEQUENTIAL DAMAGES ARE WITHOUT SUPPORT IN THE COLLABORATION AGREEMENT

Finally, the Proposed Amended Complaint fails to plausibly plead its claim for breach of contract because the Collaboration Agreement does not provide for consequential damages. It is well-accepted that "[u]nder New Yor law, parties may recover for loss of future profits, goodwill, or harm to business reputation only if the damages were within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." *Ciamara Corp. v. Widealab, Inc.*, Civ. No. 13-cv-1142 (JMF), 2013 WL 6331927, at *4 (S.D.N.Y. Dec. 5, 2013) (internal citations and quotations omitted). *See also*, *Lama Holding Co. v. Smith Barney,* 88 N.Y.2d 413, 425 (1996). The Proposed Amended Complaint is entirely devoid of ***any*** allegation that the Collaboration contemplated consequential damages as to Plaintiffs. Therefore, because damages are a necessary element of a breach of contract claim, the Proposed Amended Complaint fails to plausibly plead its claim for breach of contract.

## V.     <u>**CONCLUSION**</u>

For the reasons set forth above, Norris respectfully requests that this Court deny the Motion in its entirety along with whatever relief this Court deems just and proper.

## **CERTIFICATION OF COMPLIANCE**

Pursuant to Local Civil Rule 11.1, I, Christie R. McGuinness, hereby certify that this Memorandum of Law complies with the formatting rules, and the total number of words in this Memorandum of Law, excluding the caption, certification of compliance, table of contents, and table of authorities, is 8,412.

This the 30th day of August, 2024.

*/s/ Christie R. McGuinness*
Christie R. McGuinness

## **CERTIFICATE OF SERVICE**

I, Christie R. McGuinness, hereby certify that on August 30th, 2024, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Christie R. McGuinness*
Christie R. McGuinness